**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| PPS DATA, LLC, | ) | |
| | ) | |
| Plaintiff | ) | |
| Counterclaim Defendant, | ) | Civil Action No. |
| | ) | 1:15-CV-00084-AT |
| v. | ) | |
| | ) | |
| VSOFT CORPORATION and | ) | |
| VSERVE, INC. | ) | |
| | ) | |
| Defendants | ) | |
| Counter Claimant. | ) | |
| | ) | |

## PLAINTIFF PPS DATA LLC'S MOTION TO DISMISS DEFENDANT VSOFT CORPORATION'S INEQUITABLE CONDUCT COUNTERCLAIMS AND STRIKE PARALLEL DEFENSES

Plaintiff PPS Data, LLC ("PPS Data") moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Defendant Vsoft Corporation's ("Vsoft") inequitable conduct counterclaims. Dkt #19, ¶¶ 57-98.

# TABLE OF CONTENTS

Page

I.   INTRODUCTION AND SUMMARY OF THE ARGUMENT ......................1

   A.   Vsoft's Inequitable Conduct Counterclaims Fail To Meet All
      Relevant Legal Standards ..........................................................................2

   B.   PPS Data's Patented Technology Was An Innovative and
      Industry-Changing Concept At The Time Of Its Inception ......................4

   C.   While Others Have Recognized The Value of PPS Data's
      Technology And Licensed It, Vsoft Openly Touts Its
      Infringement ...........................................................................................5

II.  FACTUAL BACKGROUND ..............................................................................7

III. LEGAL STANDARDS .....................................................................................10

   A.   Clear and Convincing Evidence of Materiality And A
      Specific Intent to Deceive the USPTO..................................................10

   B.   Heightened Pleading Requirements of Rule 9(b)..................................13

IV.  COUNT XI OF VSOFT'S COUNTERCLAIMS SHOULD BE
    DISMISSED....................................................................................................14

   A.   Vsoft Fails to Meet Rule 9(b)'s Heightened Pleading
      Requirement...........................................................................................14

   B.   Vsoft Has Failed to Sufficiently Plead Intent to Deceive .......................18

V.   COUNTS XII THROUGH XV OF VSOFT'S COUNTERCLAIMS
   SHOULD BE DISMISSED ..............................................................................22

VI.  VSOFT'S FIFTH AFFIRMATIVE DEFENSE SHOULD BE
    STRICKEN .....................................................................................................24

WAS:265745.3

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aevoe Corp. v. AE Tech. Co.*,
   No. 2:12-CV-00053-GMN, 2013 WL 876036 (D. Nev. Mar. 7, 2013)................ 12, 14, 17, 24

*Akzo N.V. v. ITC*,
   808 F.2d 1471 (Fed. Cir. 1986).............................................................................. 12, 22

*Baxter Int'l, Inc. v. McGaw, Inc.*,
   149 F.3d 1321 (Fed. Cir. 1998).................................................................................... 23

*Bone Care Int'l, LLC v. Pentech Pharm. Inc.*,
   No. 08–CV–1083, 2010 WL 1655455 (N.D. Ill. Apr. 23, 2010)................................... 23

*Burlington Indus., Inc. v. Dayco Corp.*,
   849 F.2d 1418 (Fed. Cir. 1988).................................................................................... 11

*ChemFree Corp. v. J. Walter, Inc.*,
   No. 1:04–CV–3711–JTC, 2008 WL 3884365 (N.D. Ga. June 10, 2008)....................... 15, 17

*Correct Craft IP Holdings, LLC v. Malibu Boats*,
   2010 WL 598693 (M.D. Fla. Feb. 17, 2010) ................................................................ 21, 22

*Day v. Taylor*,
   400 F.3d 1272 (11th Cir. 2005) ..................................................................................... 7

*Go Med. Indus. Pty, Ltd. v. Inmed Corp.*,
   300 F. Supp. 2d 1297 (N.D. Ga. 2003) ....................................................................... 2, 12

*Graphic Packaging Int'l, Inc. v. C.W. Zumbiel Co.*,
   No. 3:10–cv–891–J–37JBT, 2011 WL 4862498 (M.D. Fla. Sept. 12, 2011)............. 14, 15, 25

*Hoffman-La Roche, Inc. v. Promega Corp.*,
   319 F. Supp. 2d 1011 (N.D. Cal. 2004) ....................................................................... 24

*Inc. v. Cameron Int'l Corp.*,
   No. 1:13-CV-00281-MLH-SK, 2013 WL 3936889 (E.D. Cal. July 30, 2013) ............... 15, 24

*Kimberly-Clark Corp. v. Johnson & Johnson*,
   745 F.2d 1437 (Fed. Cir. 1984)..................................................................................... 11

*ParkerVision, Inc. v. Qualcomm Inc.*,
   924 F. Supp. 2d 1314 (M.D. Fla. 2013) ....................................................................... 13, 20

WAS:265745.3

*Power Integrations, Inc., v. Fairchild Semiconductor Int'l, Inc.*,
    Civ. No. 08-309, 2009 WL 4928024 (D. Del. Dec. 18, 2009)................................................22

*Progressive Games, Inc. v. Shuffle Master, Inc.*,
    69 F. Supp. 2d 1276 (D. Nev. 1999) .............................................................23

*Regents of Univ. of Cal. v. Dako N. Am., Inc.*,
    No. C 05-03955 MHP, 2009 WL 1083446 (N.D. Cal. Apr. 22, 2009)................................. 16

*Rothman v. Target Corp.*,
    556 F.3d 1310 (Fed. Cir. 2009).......................................................... 12, 21

*SAP Am., Inc. v. Purple Leaf, LLC*,
    No. C 11-4601 PJH, 2012 WL 2237995 (N.D. Cal. June 15, 2012) ................................ 17, 25

*Server Tech., Inc. v. Am. Power Conversion Corp.*,
    No. 3:06-CV-00698-LRH, 2011 WL 1743872 (D. Nev. May 6, 2011) ........................... 15, 21

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    649 F.3d 1276 (Fed. Cir. 2011) (en banc)....................................................*passim*

**Statutes**

3 U.S.C. ................................................................................................3

28 U.S.C. § 1295(a)(l).......................................................................1

35 U.S.C. § 103 ..............................................................................7

the Check 21 Act.............................................................................5

Check Clearing for the 21st Century Act..................................................5

Check Clearing for the 21st Century Act, Pub. L. No. 108-100, 117 Stat. 1177
    (2003) (codified at 12 U.S.C. §§ 5001–5018) .....................................................5

**Other Authorities**

Accordingly, *under Vsoft's own factual allegations*....................................18

Fed. R. Civ. P. 9(b) ......................................................................*passim*

Fed. R. Civ. P. 12(b)(6)................................................................ 1, 4, 14

Fed. R. Civ. P. 12(f).......................................................................24

L.R. 5.1(C) .................................................................................26

L.R. 7.1(D) .................................................................................26

PTO. *Exergen* ........................................................................................................................ 18

Rule 9(b)'s ........................................................................................................................... 14

5. Therefore, *even as incorrectly interpreted by Vsoft* ..................................................... 17

U.S. Patent No. 5,930,778 ..................................................................................................... 7

U.S. Patent No. 6,189,785 ..................................................................................................... 9

U.S. Patent No. 7,181,430 ............................................................................................ *passim*

U.S. Patent Nos. 7,440,924, 7,624,071, 7,216,106, and 8,660,956 ................................... 22

WAS:265745.3

## I.   INTRODUCTION AND SUMMARY OF THE ARGUMENT

As more fully set forth below, Vsoft's inequitable conduct counterclaims are non-starters because Vsoft fails to provide even a single shred of evidence that the alleged misrepresentation was intentional, as required by law.   Notwithstanding this fatal flaw, Vsoft's counterclaims represent yet another example of why "[t]he habit of charging inequitable conduct in almost every major patent case has become an absolute plague. Reputable lawyers seem to feel compelled to make the charge against other reputable lawyers on the slenderest of grounds." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1289 (Fed. Cir. 2011) (en banc) (quoting *Burlington Indus., Inc. v. Dayco Corp.,* 849 F.2d 1418, 1422 (Fed. Cir. 1988)).[1]

To end this plague, the Federal Circuit significantly raised the requirements for establishing inequitable conduct in *Therasense*.  Similarly, in *Exergen Corp. v. Wal-Mart Stores, Inc.*, the Federal Circuit affirmed the district court's duty to exercise its gate-keeper function to exclude spurious inequitable conduct claims by rearticulating the heightened pleading requirements of Fed. R. Civ. P. 9(b) to which inequitable conduct claims are subject. *See* 575 F.3d 1312, 1326-27 (Fed. Cir. 2009). Against that backdrop, and in light of "the Federal Circuit's general distaste for claims of inequitable conduct,"

---

[1] The Federal Circuit, which has exclusive jurisdiction over patent appeals pursuant to 28 U.S.C. § 1295(a)(l), defines inequitable conduct as "an equitable defense to patent infringement that, if proved, bars enforcement of a patent." *Therasense*, 649 F.3d at 1285.

1

*Go Med. Indus. Pty, Ltd. v. Inmed Corp.*, 300 F. Supp. 2d 1297, 1312 (N.D. Ga. 2003),

Vsoft's inequitable conduct counterclaims are ripe for dismissal based on the pleadings,

as they are founded on factually and legally erroneous assumptions, completely failing to

comply with the requirements set forth in *Therasense* and *Exergen*.

### A.   Vsoft's Inequitable Conduct Counterclaims Fail To Meet All Relevant Legal Standards

First, even if all the factual allegations in the counterclaims are proven at trial, they

fall short of meeting the exacting "but-for materiality" standard articulated in *Therasense*.

649 F.3d at 1291.  Vsoft fails to allege any material misstatements of fact.  Instead, Vsoft

alleges the five asserted PPS Data patents ("patents-in-suit") are unenforceable due to

inequitable conduct because Danne Buchanan, a named inventor of the patents-in-suit,

rendered an incorrect opinion to the U.S. Patent and Trademark Office ("USPTO")

during prosecution of one of the patents-in-suit when he argued that a person would not

be motivated to modify prior art to obtain the patented invention because *"in my opinion,*

*such a modification is not obvious ... and would not provide 'more efficiency in*

*processing the deposited checks.'"*  Dkt #19, ¶ 70 (emphasis added).[2]  As set forth below,

an opinion is not a material fact.  Indeed, in this instance, the declaration was immaterial

---

[2] Prior art is "the body of knowledge publicly available to a person skilled in the particular art or field of the invention at the time the invention was made or one year prior to the filing of the patent application . . . In more technical terms, prior art is defined as any reference that satisfies any of the [3 U.S.C.] § 102 subsections (a), (b), (e), (f), and (g)." 3 Annotated Patent Digest § 15:59 (citations omitted).

to the prosecution of the patent, as the patent examiner subsequently maintained the prior art rejection until later allowing the patent claims on unrelated bases.

Second, Vsoft's inequitable conduct counterclaims fail to comply with the heightened pleading requirements of Fed. R. Civ. P. 9(b), as they lack the "why" and "how" elements of materiality articulated in *Exergen*.  *See* 575 F.3d at 1329-30. Specifically, Vsoft's counterclaims have the following factual deficiencies:

- Failure to plead the *why* of inequitable conduct - that is, why the alleged misrepresentation is material to the patentability of the patent claims and not cumulative of prior art already before the patent examiner; and

- Failure to explain the *how* of inequitable conduct - that is, how the patent examiner would use the allegedly misrepresented information to assess patentability.

The alleged misrepresentation is not material to patentability because the patent examiner maintained his prior art rejection in the face of Mr. Buchanan's declaration submitted during prosecution of U.S. Patent No. 7,181,430 (''the '430 patent''), and subsequently allowed the '430 patent on unrelated grounds.  Any one of the Rule 9(b) pleading failures is sufficient to warrant dismissal of the inequitable conduct counterclaims.  *Id.*, at 1328-30.

Third, Vsoft's inequitable conduct counterclaims should be dismissed because they fail to allege any specific facts establishing the required level of scienter (i.e., (1) knowledge of the withheld material information or of the falsity of the material misrepresentation, and (2) specific intent to deceive the PTO).  *Id.,* at 1330.  Instead

3

Vsoft makes the conclusory, factually unsupported claim that "Mr. Buchanan's [alleged] misrepresentation was made with an intent to deceive the USPTO." Dkt #19, ¶ 81.

However, even if Vsoft's inequitable conduct counterclaims complied with Rule 9(b) and/or established scienter, which they do not, they should still be dismissed under Rule 12(b)(6) because the alleged misrepresentation was prefaced with "in my opinion," and was not a statement of fact (Dkt #19, ¶ 70), and even if the '430 patent is limited to the outsourcing of check processing to third parties, no such analogous limitations exist in the other four patents-in-suit.

### B.    PPS Data's Patented Technology Was An Innovative and Industry-Changing Concept At The Time Of Its Inception

PPS Data owns a portfolio of patents relating to remote deposit technology that its predecessor developed in the late 1990s. The patents relate to software and hardware that allow banks, credit unions, merchants, and consumers to clear checks by transmitting only an image of the check and the data on the check without ever physically routing a paper check. Although this concept may seem commonplace today, this was a profound innovation at the time the first PPS Data patent application was filed in 2000.

Indeed, in 2000, the banking system was reliant on nightly deliveries of paper checks. As a result, when all airplanes were grounded for days in the aftermath of the 9/11 terrorist attacks, the U.S. banking system nearly came to a halt because checks could not be transported from "banks of first deposit" to Federal Reserve Banks or "maker

4

banks" for settlement.  Accordingly, in 2003, Congress passed the Check Clearing for the 21st Century Act ("the Check 21 Act"), allowing the recipient of an original paper check to create a digital version of the check for processing and presentment, eliminating the need for further handling of a paper check.  Check Clearing for the 21st Century Act, Pub. L. No. 108-100, 117 Stat. 1177 (2003) (codified at 12 U.S.C. §§ 5001–5018).

The passage of the Check 21 Act facilitated financial institutions' more rapid adoption of PPS Data's patented remote deposit technologies. Mr. Buchanan, the lead inventor of the patents-in-suit and PPS Data's former CEO, is a recognized leader of electronic check processing and clearing technology, and represented the five major banking and financial services trade associations (the American Bankers Association, America's Community Bankers, the Consumer Bankers Association, the Financial Services Roundtable, and the Independent Community Bankers of America) before the Senate Banking Committee on the Check 21 Act.[3]

### C.  While Others Have Recognized The Value of PPS Data's Technology And Licensed It, Vsoft Openly Touts Its Infringement

Six leading remote deposit vendors have already licensed PPS Data's technology, which makes processing checks cheaper and more efficient.  Declaration of B. McKay, ¶

---

[3] Prior to a corporate reorganization in 2010, PPS Data was known as NetDeposit, which was a subsidiary Zions Bancorporation formed in the early 2000s to commercialize the patented remote deposit technology.  In addition to licensing the patented technology at issue in this case, PPS Data is a leading provider of medical and pharmacy payment solutions, offered under the ProviderPay brand name.

2.  However, Vsoft has chosen to use PPS Data's technology without a license,

consequently resulting in the present patent infringement lawsuit.  Vsoft's infringing

conduct includes both (a) providing remote deposit systems to others, including financial

institutions, credit unions, check processing cooperatives, and bank customers, to practice

the patented inventions, and (b) remotely processing checks itself for such entities.

Vsoft's own website touts the scope of its infringing activities, such as:

> (1) "VSoft's remote deposit capture solution addresses the capture,
> validation, processing, and transmission of check images from all points of
> presentment."  *See* Ex. 1; http://www.vsoftcorp.com/products-
> services/remote-deposit-capture

> (2) VSoft Centrum is a central system for deposit processing: "Central Site
> The broad VSoft Centrum™ solution line delivers image-based automation
> efficiencies into your transaction processing operations." *See* Ex. 2;
> http://www.vsoftcorp.com/wp-content/uploads/2012/03/VSoft-Corporate-
> Overview.pdf

> (3) "VSoft's OnView Mobile Deposit architecture can be deployed either
> in-house at the bank or hosted out of our data center."  *See* Ex. 3;
> http://www.vsoftcorp.com/products-services/remote-deposit-capture/retail-
> deposit/mobile-deposit/

> (4) "Currently VServe services nearly 100 clients directly and over 800
> clients through partner relationships." *See* Ex. 4;
> http://www.vsoftcorp.com/vserve/

Instead of seeking a license like its industry peers, Vsoft has opted for a kitchen

sink approach to defending this case, pleading six affirmative defenses and fifteen

WAS:265745.3

different counterclaims.  PPS Data's present motion to dismiss is an opportunity to uncluttered the case, so the parties can focus on the merits of the claims.

## II.   FACTUAL BACKGROUND

Vsoft's inequitable conduct claims are based on a single statement made during prosecution of the '430 patent.  On November 23, 2004, Patent Examiner Nga B. Nguyen issued an Office Action rejecting, among others, pending claim 47 under 35 U.S.C. § 103 as being obvious over U.S. Patent No. 5,930,778 to Terry Geer ("Geer") in combination with several other references.  Ex. 5 (Nov. 23, 2004 Office Action) at 2.  At that time, claim 47 recited, in relevant part:

> A method for deposit processing at a central site a plurality of original checks deposited at a remote site with accompanying deposit information ... wherein the central site is not a bank of first deposit for these checks and wherein the deposit account designation for each of a plurality of the checks is to a different remote bank of first deposit.

> *See* Ex. 6, (Excerpt from Apr. 30, 2004 Amend.) at 11.[4]

The Examiner asserted that although "Geer does not disclose wherein the central site is not a bank of first deposit for these checks…employing a central site to handle the deposited checks on behalf of a bank of first deposit is well known in the art. Therefore, it

---

[4] Because Vsoft's counterclaims rely on statements made during prosecution of the '430 patent, the prosecution history of the '430 patent was incorporated into the counterclaims.  *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) ("[T]he court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed.").

would have been obvious to one with ordinary skill in the art at the time the invention was made to modify Geer's [system] to incorporate the feature above for the purpose of providing more efficiency in processing the deposited checks." Ex. 5 at 5.

On May 6, 2005, prosecuting attorney William Ellis submitted a declaration from Mr. Buchanan to refute the Examiner's rationale supporting the obviousness rejection.  In his declaration, Mr. Buchanan stated that:

> "…there is no possible reason why a bank of first deposit would set up a central system to process checks for other unrelated banks of first deposit.  Thus, in my opinion such a modification is not obvious in Geer and would not provide 'more efficiency in processing the deposited checks' in the Geer operation."

Ex. 7 (May 6, 2005 Declaration of Danne Buchanan) at 6 (emphasis in original). Accordingly, this statement was made in the specific context of rebutting the Examiner's proposed modification to the Geer check processing system, opining that the Examiner relied on inapposite prior art and that there would be no technical reason to make the modification proposed by the Examiner.

To the extent Vsoft attempts to take Mr. Buchanan's statement out of the narrow context in which it was made to instead relate to broader propositions regarding the state of the art at the time the invention was filed, the statement becomes cumulative of prior art that the Examiner already considered. For example, the patent examiner had previously cited U.S. Patent No. 6,189,785 to Lowery ("Lowery") for disclosing "the central site identifying image data errors in the electronic check data received…[and]

8

then sending an instruction to the remote site to correct the errors," and stated that "employing a central site to handle the deposited checks on behalf of a bank of first deposit is well known in the art."  Ex. 5 at 3 & 5; *see also* Ex. 8 (Mar. 21, 2003 Office Action) at 2 ("Lowery discloses a method for processing at a central site an original check deposited at a remote site").  The Examiner was, therefore, fully apprised of relevant prior art and free to draw his own conclusions, irrespective of the opinions expressed by Mr. Buchanan.

Importantly, the Examiner was unmoved by Mr. Buchanan's opinion and issued a Final Office Action on October 11, 2005, again rejecting the pending claims, including claim 47.  Ex. 9 (Oct. 11, 2005 Office Action) at 3.  On May 10, 2006, claim 47 was amended to include the following claim limitation:

> "the central system transmitting electronic check data directly or indirectly to a maker bank or a Federal Reserve Bank or a correspondent bank <u>in a transmission having a transmission path that bypasses</u> the MICR capture, deposit accounting, cash management, and float processing of the bank of first deposit for that deposit transaction."

Ex. 10 (Excerpt from May 10, 2006 Amend.) at 12 (emphasis in original) (hereinafter ("the bypass limitation")).  On November 15, 2006, notably in response to the May 10, 2006 amendment and **not** as a result of Mr. Buchanan's earlier May 6, 2006 declaration, the Examiner issued a Notice of Allowance, indicating that claim 47 was allowed because the prior art did not disclose or suggest the bypass limitation, or that "the

9

central system is separate from MICR capture, deposit accounting, cash management, and float processing systems for a bank of first deposit." Ex. 11 (Nov. 15, 2006 Notice of Allowance) at 3. Significantly, Vsoft acknowledges that this was the reason the '430 patent was allowed, consequently confirming the immateriality of Mr. Buchanan's opinion. Dkt #19, ¶ 74.

## III.   LEGAL STANDARDS

### A.   Clear and Convincing Evidence of Materiality And A Specific Intent to Deceive the USPTO

In its 2011 *Therasense* decision, an en banc Federal Circuit drastically curtailed the inequitable conduct defenses that have plagued the patent system for years. 649 F.3d at 1290 ("This court now tightens the standards for finding both intent and materiality in order to redirect a doctrine that has been overused to the detriment of the public."). In doing so, the Federal Circuit recognized the harm inequitable conduct claims inflict on courts and litigants:

> [I]nequitable conduct has become a significant litigation strategy…Because the doctrine focuses on the moral turpitude of the patentee with ruinous consequences for the reputation of his patent attorney, it discourages settlement and deflects attention from the merits of validity and infringement issues. Inequitable conduct disputes also increase the complexity, duration and cost of patent infringement litigation that is already notorious for its complexity and high cost.

*Id.* at 1288 (internal citations and quotation marks omitted). Tellingly, the Federal Circuit made many of these same observations twenty-five years ago. *See e.g.,*

10

*Burlington Indus., Inc. v. Dayco Corp.*, 849 F.2d 1418, 1422 (Fed. Cir. 1988) ("[T]he habit of charging inequitable conduct in almost every major patent case has become an absolute plague."); *see also Kimberly-Clark Corp. v. Johnson & Johnson*, 745 F.2d 1437, 1454 (Fed. Cir. 1984) (complaining that the inequitable conduct defense "has been overplayed, is appearing in nearly every patent suit, and is cluttering up the patent system.").

By tightening the standards for proving inequitable conduct, the Federal Circuit sent a strong message that inequitable conduct claims, like the claims in this case, need to stop. Under the Federal Circuit's new heightened standards, the accused infringer must prove by **clear and convincing evidence** that the patentee knew the omitted or misrepresented prior art was material and that the patentee acted with specific intent to deceive the PTO. *Therasense*, 649 F.3d at 1290 (emphasis added); *Exergen*, 575 F.3d at 1328-29. Merely alleging that "the Applicants deliberately and/or intentionally attempted to withhold any information regarding [certain prior art]" is insufficient to plead an intent to deceive. *Aevoe Corp. v. AE Tech. Co.,* No. 2:12-CV-00053-GMN, 2013 WL 876036, at *10 (D. Nev. Mar. 7, 2013) (internal quotation marks omitted). Materiality and intent must be analyzed separately, and intent may not be inferred from materiality. *Id.*, *see also Go Med. Indus.*, 300 F. Supp. 2d at 1312. The level of materiality required to prove

11

inequitable conduct is "but-for materiality" i.e., the PTO would not have allowed a claim had it been aware of the undisclosed prior art.  *Therasense*, 649 F.3d at 1291.

The Federal Circuit has also found that an alleged mischaracterization of a prior art reference that was before the PTO and considered by the patent examiner does not constitute inequitable conduct. *See Rothman v. Target Corp.*, 556 F.3d 1310, 1329 (Fed. Cir. 2009) (holding that "an attempt to characterize the prior art in a manner favorable to the attorney's client" is "far from deception"); *Akzo N.V. v. ITC*, 808 F.2d 1471, 1482 (Fed. Cir. 1986) ("The mere fact that Du Pont attempted to distinguish the Blades process from the prior art does not constitute a material omission or misrepresentation. The examiner was free to reach his own conclusion … .").

Regarding intent, the Federal Circuit has found that although intent may be inferred from indirect and circumstantial evidence, to meet the clear and convincing evidence standard, "the specific intent to deceive must be 'the single most reasonable inference able to be drawn from the evidence.'" *Therasense,*  649 F.3d at 1290 (quoting *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1366 (Fed. Cir. 2008)). "[T]he evidence 'must be sufficient to *require* a finding of deceitful intent in the light of all the circumstances,'" and "when there are multiple reasonable inferences that may be drawn, intent to deceive cannot be found." *Id.* at 1290-91 (emphasis in original) (quoting *Kingsdown Med. Consultants, Ltd. V. Hollister, Inc.*, 863 F.2d 867, 873 (Fed. Cir. 1988));

12

*see also ParkerVision, Inc. v. Qualcomm Inc.*, 924 F. Supp. 2d 1314, 1318 (M.D. Fla. 2013) (dismissing inequitable conduct counterclaims where "specific intent to deceive [was] not the only or single most reasonable inference to be drawn.").

### B.   Heightened Pleading Requirements of Rule 9(b)

In addition to raising the substantive requirements for proving inequitable conduct, the Federal Circuit reaffirmed inequitable conduct's heightened pleading requirements under Fed. R. Civ. P. 9(b). "[I]n pleading inequitable conduct in patent cases, Rule 9(b) requires identification of the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen*, 575 F.3d at 1327. To comply with *Exergen*, a counterclaim must: (1) identify a specific individual (not merely the Applicant, or Applicant's patent counsel) that knew of the material information and deliberately withheld or misrepresented it; (2) identify what material information was withheld or misrepresented; (3) identify which claims and claim limitations the material information would invalidate; (4) explain with particularity why the withheld information is material and not cumulative; and (5) explain with particularity how the Examiner would use the information to assess the patentability of the claims.  *Aevoe Corp.*, 2013 WL 876036, at *7-8.

13

## IV.    COUNT XI OF VSOFT'S COUNTERCLAIMS SHOULD BE DISMISSED

In Count XI of its counterclaims, Vsoft alleges that the '430 patent is unenforceable for inequitable conduct based on the declaration submitted by Mr. Buchanan during prosecution. Count XI falls far short of the pleading requirements of Rule 9(b), and the limited facts in the pleading fail to state a claim for inequitable conduct. Count XI should therefore be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

### A.    Vsoft Fails to Meet Rule 9(b)'s Heightened Pleading Requirement

Vsoft's inequitable conduct claims fail to plead "the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen*, 575 F.3d at 1327.  Specifically, Vsoft's pleading at least fails to explain with particularity (1) why the allegedly misrepresented information is material and not cumulative; and (2) how the Examiner would use the information to assess the patentability of the claims. *Id.,* at 1329-30; *Graphic Packaging Int'l, Inc. v. C.W. Zumbiel Co.*, No. 3:10–cv–891–J–37JBT, 2011 WL 4862498, at *3 (M.D. Fla. Sept. 12, 2011) (dismissing defendant's inequitable conduct counterclaims and striking parallel affirmative defense); *ChemFree Corp. v. J. Walter, Inc.*, No. 1:04–CV–3711–JTC, 2008 WL 3884365, at *8 (N.D. Ga. June 10, 2008) (granting summary judgment on inequitable conduct counterclaims because defendants failed to demonstrate how the alleged misrepresentation was material and not cumulative to prior art before the examiner).

14

Vsoft's pleading merely includes the conclusory statement that "But for Mr. Buchanan's misrepresentation, the '430 Patent would not have issued." Dkt #19, ¶ 81. However, in order to meet the heightened pleading requirements of Rule 9(b), Vsoft's pleading must explain why Mr. Buchanan's alleged misrepresentation was material. *See Graphic Packaging Int'l,* 2011 WL 4862498, at *3.  Bald assertions of materiality are insufficient and mandate dismissal. *See Server Tech., Inc. v. Am. Power Conversion Corp.*, No. 3:06-CV-00698-LRH, 2011 WL 1743872, at *3 (D. Nev. May 6, 2011) (dismissing inequitable conduct counterclaims for failure to plead why allegedly withheld prior art is material); *Seaboard lnt'l, Inc. v. Cameron Int'l Corp.,* No. 1:13-CV-00281-MLH-SK, 2013 WL 3936889, at *5 (E.D. Cal. July 30, 2013) (dismissing inequitable conduct counterclaim and striking parallel affirmative defense where defendant did not allege why the allegedly withheld references are material).

Vsoft's conclusory statement regarding the materiality of Mr. Buchanan's alleged misrepresentation is plainly contradicted by the minimal factual allegations Vsoft actually pled.  Vsoft's Answer acknowledges, as it must, that the Examiner allowed the patent claims "after issuing at least two more office actions" subsequent to Mr. Buchanan's declaration.  Dkt #19, ¶ 74.  Indeed, after receiving Mr. Buchanan's declaration, the Examiner rejected the claims based on the grounds that Mr. Buchanan's declaration attempted to overcome.  *See* Ex. 9, ¶ 6 (repeatedly citing to Geer). Mr. Buchanan's

15

declaration therefore clearly had no effect in overcoming the rejection and obtaining allowance of the '430 patent claims. It follows then that since Mr. Buchanan's declaration had no effect in overcoming the rejection or obtaining allowance, Mr. Buchanan's declaration was immaterial.

Additionally, because Mr. Buchanan's declaration was merely his opinion, as evidenced by his preface "in my opinion," it is wholly immaterial. Dkt #19, ¶ 70. An opinion is not a material fact because "the examiner [is] able reach to his or her own conclusion regarding the cited…prior art." *Regents of Univ. of Cal. v. Dako N. Am., Inc.*, No. C 05-03955 MHP, 2009 WL 1083446, at *23 (N.D. Cal. Apr. 22, 2009) (no misrepresentation of material fact in inventor affidavit where "[inventor's] statement about [prior art] was qualified by the phrase 'it is my opinion,' which can be reasonably understood to be summarizing the preceding explanations of the prior art - art that was all before the examiner").

Moreover, Vsoft does not even attempt to explain in its pleading why Mr. Buchanan's statement is not cumulative of the prior art that was already before the Examiner, providing another basis to dismiss Vsoft's counterclaim. *ChemFree Corp.*, 2008 WL 3884365, at *8; *see also Aevoe*, 2013 WL 876036, at *8 ("[T]o satisfy the 'why' component, Defendants' counterclaim must also plead with particularity that the withheld information is not cumulative of the information actually disclosed during

16

prosecution.").  Vsoft alleges that Mr. Buchanan's statement was false because "it was well known in the banking industry that banks of first deposit were already outsourcing the processing of checks to a central system."  Dkt #19, ¶ 79. However, earlier in prosecution, the Examiner asserted that "employing a central site to handle the deposited checks on behalf of a bank of first deposit is well known in the art."  Ex. 5 at 5. Therefore, *even as incorrectly interpreted by Vsoft,* Mr. Buchanan's opinion was cumulative of the prior art already of record.

Vsoft also has not, and cannot, allege *how* the Examiner would have used the allegedly misrepresented information to reject the '430 patent claims, as required.  *SAP Am., Inc. v. Purple Leaf, LLC*, No. C 11-4601 PJH, 2012 WL 2237995, at *6 (N.D. Cal. June 15, 2012) (dismissing inequitable conduct counterclaims where facts pled failed to show that "the patentee's misconduct resulted in… receiving an unwarranted claim") (quoting *Exergen*, 575 F.3d at 1292).  In fact, Vsoft admits in its counterclaims that the Examiner ultimately allowed claim 47 because "the prior arts [including Geer] do not considered [sic] the possibility of: wherein the central system is separate from MICR capture, deposit accounting, cash management, and float processing systems for a bank of first deposit." Dkt #19, ¶74. Vsoft does not allege that any claims were allowed on the direct basis of Mr. Buchanan's declaration.  Accordingly, *under Vsoft's own factual*

*allegations*, Mr. Buchanan's statement was not a "but for" cause to issuance of the '430 patent because it had no direct bearing on the issuance of the claims.[5]

**B.**    **Vsoft Has Failed to Sufficiently Plead Intent to Deceive**

Vsoft also does not allege any facts to support its allegation that (1) Mr. Buchanan's statement was false, (2) that he knew it was false, and (3) that the statement was submitted with specific intent to deceive the PTO. *Exergen*, 575 F.3d at 1328-29.

First, Vsoft alleges that "[a]t the time Mr. Buchanan's May 6, 2005 declaration was filed with the USPTO, unrelated banks of first deposit had already implemented the practice of outsourcing the processing of checks to a central system" and that this outsourcing was "so widespread and had been going on for so long that it was well known to persons of ordinary skill in the banking industry."  Dkt #19, ¶ 76.  However, Vsoft cites to no evidence for this bold assertion, merely stating that "upon information and belief," nonparties Fiserve, Inc. and Jack Henry & Associates' "operations met every limitation of at least claim 47" of the application resulting in the '430 patent at the time it was filed.  *Id.*, at ¶¶ 77-78.  However, relying "on information and belief," is legally sufficient only if the pleading "sets forth the specific facts upon which the belief is

---

[5] This is further confirmed by the Examiner's Notice of Allowance, which states that the patent claims were allowed because the prior art does not disclose or suggest (1) the "bypass limitation," and (2) the limitation that "the central system is separate from MICR capture, deposit accounting, cash management, and float processing systems for a bank of first deposit."  Ex. 11 at 3.

WAS:265745.3

reasonably based." *Exergen*, 575 F.3d at 1330 & n.7 (citing additional cases). Vsoft's allegation of obscure and vague "operations" by uninvolved third parties, without any discussion as to what those "operations" were or how they were even remotely related to the claimed technology, fails to meet this requirement. Vsoft's allegation "provides neither the 'information' on which it relies nor any plausible reasons for its 'belief'" that Mr. Buchanan's statement was false and, therefore, fails to meet the pleading requirements of Rule 9(b). *Id.* at 1330-31.

Even if Vsoft's unsupported speculation about the industry practice of outsourcing is taken at face value, that is not inconsistent with Mr. Buchanan's *opinion* as expressed in his declaration regarding the Geer patent that "there is no possible reason why a bank of first deposit would set up a central system to process checks for other unrelated banks of first deposit." Ex. 7 at 7 (emphasis removed). Mr. Buchanan's opinion was directed to possible motivations to modify a specific prior art and was not a commentary on whether the general practice of outsourcing check processing was well known or not. Vsoft's allegations therefore fail to plead any facts from which the *single* most likely inference is that a false statement was made with specific intent to deceive the patent examiner, and must be dismissed. *See ParkerVision,* 924 F. Supp. 2d at 1318 (dismissing inequitable conduct counterclaims where "specific intent to deceive [was] not the only or single most reasonable inference to be drawn" from the alleged misconduct).

19

Second, even if Mr. Buchanan's statement is assumed to be false, Vsoft fails to plead a single fact indicating that Mr. Buchanan knew of the alleged falsehood.  In desperation, Vsoft merely speculates that because Mr. Buchanan had 27 years of experience in the banking industry and was "very familiar with competitor check processing operations and competitor thinking at the time of the invention," Mr. Buchanan "knew or willfully disregarded the fact that it was well known in the banking industry that banks of first deposit were already outsourcing the processing of checks to a central system." Dkt #19, ¶¶ 69 & 79 (quotation omitted).  Vsoft does not provide any evidence to support this egregious allegation.  For example, Vsoft does not provide any facts regarding *when* outsourcing to central systems was established, *who* established it, *how* it was established, *who* was using it, or *where* it was being used at the time.  Vsoft audaciously makes a naked assertion that outsourcing was "well known" and expects it to be accepted as true.  The court should not allow this. *See Exergen*, 575 F.3d at 1330 ("[N]o facts are alleged from which one can reasonably infer that ... the individual who made this statement to the PTO was aware of an allegedly contradictory statement on Exergen's website.").[6]

---

[6] *See also Server Tech.*, 2011 WL 1743872, at *3 (finding that unsupported allegation that patentee had knowledge of allegedly withheld prior art does not permit the Court to "reasonably infer that an individual who made the material omissions or misrepresentations had knowledge of the falsity of any statements or omissions").

Third, even if Vsoft's pleadings did sufficiently allege that Mr. Buchanan made a knowingly false statement, which they do not, Vsoft still fails to plead any facts suggesting that the statement was made with specific intent to deceive the USPTO. Vsoft alleges "[on] information and belief, Mr. Buchanan's misrepresentation was made with an intent to deceive the USPTO." Dkt #19, ¶ 81.  Vsoft fails to identify what "information" its belief is based on and the reasons for such belief.  Its conclusory allegations regarding deceptive intent contain no facts from which the Court could infer an intent to deceive.  *Correct Craft IP Holdings, LLC v. Malibu Boats*, 2010 WL 598693, at *4 (M.D. Fla. Feb. 17, 2010) ("Pleading deceptive intent on information and belief is permitted…'but only if the pleading sets forth the specific facts upon which the belief is reasonably based.'" (*quoting Exergen*, 575 F.3d at 1330-31)).

In addition, Mr. Buchanan's statement was prefaced as an opinion, which further confirms that the statement was not made with any intent to deceive. See *Rothman*, 556 F.3d at 1329 ("[A]n attempt to characterize the prior art in a manner favorable to the attorney's client" is "far from deception"); *Akzo*, 808 F.2d at 1482 ("The mere fact that DuPont attempted to distinguish…the prior art does not constitute a material omission or misrepresentation. The examiner was free to reach his own conclusion.").

21

## V.      COUNTS XII THROUGH XV OF VSOFT'S COUNTERCLAIMS SHOULD BE DISMISSED

In Counts XII, XIII, XIV, and XV of its counterclaims, Vsoft alleges

unenforceability of the four other patents-in-suit, U.S. Patent Nos. 7,440,924, 7,624,071,

7,216,106, and 8,660,956 (collectively "the related patents") based on a theory of

infectious unenforceability.  Dkt. No. 19, ¶¶ 83-98.  However, for such an allegation to

comply with Rule 9(b), Vsoft must allege an "immediate and necessary relation" between

the related patents and Mr. Buchanan's alleged misrepresentation.  *Correct Craft*

*Holdings*, 2010 WL 598693, at *5 (*citing Consolidated Aluminum Corp. v. Foseco Int'l*

*Ltd.*, 910 F.2d 804, 810-11 (Fed. Cir. 1990)).

Here, Vsoft merely alleges that the related patents share "subject matter" with the

'430 patent, without even attempting to explain how Mr. Buchanan's statement is

material to the claims of each of the related patents.  Dkt #19, ¶¶ 85, 89, 93 and 97.

Merely asserting the relationship between patents is "not sufficient to establish the

required 'immediate and necessary relation'" between the alleged misconduct and the

claims of the related patents.  *Power Integrations, Inc., v. Fairchild Semiconductor Int'l,*

*Inc.,* Civ. No. 08-309, 2009 WL 4928024, at *9 (D. Del. Dec. 18, 2009) (holding that

allegations that patents have related specifications and share some figures are insufficient

to plead infectious unenforceability); *see also Bone Care Int'l, LLC v. Pentech Pharm.*

22

*Inc.*, No. 08–CV–1083, 2010 WL 1655455, at *3 (N.D. Ill. Apr. 23, 2010) ("Defendants must allege more than a relationship between the patents.").

Moreover, the alleged misconduct in the prosecution of the '430 patent is immaterial to the claims of the other four patents. *Baxter Int'l, Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1329 (Fed. Cir. 1998) (finding that alleged misrepresentation in parent patent application does not render related patent application unenforceable where the alleged misrepresentation is not material to the claims of the related patent application); *see also Progressive Games, Inc. v. Shuffle Master, Inc.*, 69 F. Supp. 2d 1276, 1283 (D. Nev. 1999) (applying *Baxter*). All of Vsoft's inequitable conduct allegations rely on Mr. Buchanan's statement that "there is no possible reason why a bank of first deposit would set up a central system to process checks for other unrelated banks of first deposit." Dkt #19, ¶ 70. This statement apparently relates to the limitation in the '430 patent claims that at least some of the deposits received by the central system include a deposit account designation "to a different bank of first deposit." Dkt #1-1, col. 18, ll. 28-31. None of the claims of the related patents include this limitation. Therefore, even assuming arguendo that Vsoft's allegations regarding Mr. Buchanan's statement are true (even though they are not), the claims of the related patents "'have no relation to' the unconscionable act in question . . . [and] the statement 'is in no way material' to the prosecution of the [related patent] claims." *Hoffman-La Roche, Inc. v. Promega Corp.*, 319 F. Supp. 2d 1011, 1020

23

(N.D. Cal. 2004) (quoting *Baxter*, 149 F.3d at 1331-32) ).  Accordingly, Vsoft's counterclaims XII, XIII, XIV, and XV should be dismissed.

## VI.  VSOFT'S FIFTH AFFIRMATIVE DEFENSE SHOULD BE STRICKEN

Vsoft's fifth affirmative defense should be stricken for the same reasons that Vsoft's inequitable conduct counterclaims should be dismissed. This affirmative defense states, without any supporting factual allegations, that "[t]he patents asserted in the Complaint are invalid by reason of inequitable conduct perpetuated upon the U.S. Patent and Trademark Office in the prosecution of the '430 Patent."  Dkt #19, at 18.

Aside from wholly failing to comply with Rule 9(b), because the affirmative defense apparently relies on the deficient pleadings of Vsoft's inequitable conduct counterclaims, the affirmative defense should be stricken as redundant.  *See* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."); *see also Aevoe*, 2013 WL 876036, at *11 (striking inequitable conduct affirmative defenses based on failure to sufficiently plead inequitable conduct counterclaims); *Seaboard Int'l*, 2013 WL 3936889, at *6 (striking inequitable conduct affirmative defense for same reasons as dismissing parallel counterclaims); *Graphic Packaging Int'l*, 2011 WL 4862498, at *3 n.4 (same).

## VII.   CONCLUSION

For the reasons set forth above, PPS Data respectfully requests dismissal of

Vsoft's inequitable conduct counterclaims and affirmative defense.

DATED this 13th day of April, 2015.

Respectfully submitted,

CLAYTON, MCKAY & BAILEY P.C.

_____/Brannon McKay/_____
Brannon C. McKay, GA Bar No. 558603
Benjamin D. Bailey, GA Bar No. 117201
877 Hillwood Dr.
Marietta, GA 30068
Tel. 404-414-8633
Fax. 404-704-0670
bmckay@cmbpc.com
bbailey@cmbpc.com

Anthony H. Son, Admitted Pro Hac Vice
Sean Wooden, Admitted Pro Hac Vice
Andrews Kurth, LLP
1350 I Street, NW, Suite 1100
Washington, DC 20005
Tel. 202-662-2700
Fax. 202-662-2739
AnthonySon@andrewskurth.com
SeanWooden@andrewskurth.com

*Counsel for Plaintiff and Counterclaim Defendant PPS Data, LLC*

WAS:265745.3

**CERTIFICATE OF COMPLIANCE**

Pursuant to L.R. 7.1(D), the undersigned counsel certifies that the foregoing brief has been prepared in Times New Roman, 14 point, one of the four fonts and points approved by the Court in L.R. 5.1(C).

**CERTIFICATE OF SERVICE**

I certify that on this day I have electronically filed the foregoing PLAINTIFF PPS DATA LLC'S MOTION TO DISMISS DEFENDANT VSOFT CORPORATION'S INEQUITABLE CONDUCT COUNTERCLAIMS AND STRIKE PARALLEL DEFENSES with the Clerk of Court using the CM/ECF Systems, which will automatically send email notification of such filing to all attorneys of record.

DATED this 13th day of April, 2015.

Respectfully submitted,


CLAYTON, MCKAY & BAILEY P.C.

_____/Brannon McKay/_____
Brannon C. McKay
877 Hillwood Dr.
Marietta, GA 30068
Tel. 404-414-8633
Fax. 404-704-0670

26

bmckay@cmbpc.com
bbailey@cmbpc.com

27