IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| PPS DATA, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. |
| v. | ) | 1:15-CV-0084-AT |
| | ) | |
| VSOFT CORPORATION and | ) | |
| VSERVE, INC. | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT VSOFT CORPORATION'S POINTS
AND AUTHORITIES IN OPPOSITION TO
PLAINTIFF'S MOTION TO DISMISS
VSOFT CORPORATION'S INEQUITABLE CONDUCT
<u>COUNTERCLAIM AND STRIKE PARALLEL DEFENSES</u>**

Pursuant to L.R. 7.1(B), N.D. Ga., Defendant Vsoft Corporation submits the

following Points and Authorities in Opposition to Plaintiff's Motion to Dismiss

Vsoft Corporation's Inequitable Conduct Counterclaim and Strike Parallel

Defenses (D.I.. #22) (the "Motion"), showing this Court as follows.

## <u>TABLE OF CONTENTS</u>

I.   Preliminary Statement .........................................................................1

II.  Points and Authorities .......................................................................5

     A.   The Motion Apparently Misapprehends the Standard For Pleading
          Inequitable Conduct.....................................................................5

          1.   The Motion Cannot Meet the Standard Under Fed. R. Civ. P.
               12(b)(6). ...........................................................................5
          2.   The Motion Misapprehends The Materiality Standard of
               *Therasense*. .......................................................................6
          3.   The Motion Conflates the *Therasense* Standard for Proving
               Inequitable Conduct with the Particularity Requirements Set
               Forth in *Exergen*. ..............................................................8

     B.   Vsoft's Inequitable Conduct Counterclaims Clearly Satisfy The
          Materiality-Related Pleading Requirement of *Exergen*. .......................9

          1.   Even Ignoring the *Per Se* Materiality of Mr. Buchanan's
               Misrepresentation, Vsoft's Inequitable Conduct Counterclaims
               Satisfy the "Why" Requirement of *Exergen*. ..............................10
          2.   Even Ignoring the *Per Se* Materiality of Mr. Buchanan's
               Misrepresentation, Vsoft's Inequitable Conduct Counterclaims
               Satisfy the "How" Requirement of *Exergen*...............................12

     C.   Vsoft's Inequitable Conduct Counterclaims Adequately Plead Intent
          to Deceive under *Exergen*. .......................................................16

     D.   Vsoft's Counterclaims Adequately Plead Infectious Inequitable
          Conduct....................................................................................21

     E.   PPS Data's Request to Strike Vsoft's Fifth Affirmative Defense of
          Inequitable Conduct Is Meritless. ..............................................24

III. Conclusion ........................................................................................25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Adinolfe v. United Technologies Corp.*,
   768 F.3d 1161 (11th Cir. 2014) ........................................................14

*Agfa Corp. v. Creo Prods. Inc.*,
   451 F.3d 1366 (Fed. Cir. 2006)........................................................21

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...........................................................................6

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...........................................................................6

*Delano Farms Co. v. Cal. Table Grape Comm'n*,
   655 F.3d 1337 (Fed. Cir. 2011).........................................................9

*Eon-Net LP v. Flagstar Bancorp*,
   653 F.3d 1314 (Fed. Cir. 2011).........................................................2

*Evonik Degussa GmbH v. Materia Inc.*,
   No. 09-cv-636, 2012 WL 4503771 (D. Del. Oct. 1, 2012)....................9

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
   575 F.3d 1312 (Fed. Cir. 2009)................................................ *passim*

*Graphic Packaging Int'l, Inc. v. C.W. Zumbiel Co.*,
   2011 WL 5829674 (N.D.Ga. Aug. 1, 2011) ......................................6

*Intellect Wireless, Inc. v. HTC Corp.*,
   732 F.3d 1329 (Fed. Cir. 2013)........................................................19

*Paolo v. OneWest Bank, FSB*,
   2014 WL 3557703 (N.D. Ga. July 18, 2014) ....................................15

*Papasan v. Allain*,
   478 U.S. 265 (1986).........................................................................15

*Pullar v. Gen. MD Group*,
   2013 WL 5284684 (N.D.Ga. Sept. 17, 2013) .....................................6

9378961 v2

*Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*,
711 F.2d 989 (11th Cir.1983) ..................................................................................6

*Regents of Univ. of Cal. V. Dako N. Am., Inc.*,
C.A. No. 05-03955 MHP, 2009 WL 1083446 (N.D. Cal. Apr. 22, 2009)..............................12

*Rohm & Haas Co. v. Crystal Chem. Co.*,
722 F.2d 1556 (Fed.Cir.1983)..................................................................................22

*Semiconductor Energy Lab. Co. v. Samsung Elec. Co.*,
24 F. Supp. 2d 537 (E.D. Va. 1998) .........................................................................21, 22

*Therasense, Inc. v. Becton Dickinson and Co.*,
649 F.3d 1276 (Fed. Cir. 2011) (en banc)..................................................... *passim*

*Truth Hardware Corp. v. Ashland Products, Inc.*,
2003 WL 22005839 (D. Del. Aug. 19, 2003) ......................................................21, 22, 24

*Vitronics Corp. v. Conceptronic, Inc.*,
90 F.3d 1576 (Fed.Cir.1996)...................................................................................16

**Statutes**

35 U.S.C. § 121....................................................................................................22

Check Clearing for the 21st Century Act, Pub. L. No. 108-100, 117 Stat. 1177 (2003) ..............................................................................................................20

Leahy-Smith America Invents Act, Pub. L. No. 112-29, §18, 125 Stat. 283, 329-31 (2011).......................................................................................................2, 3

117 Stat. 1177 (2003).............................................................................................20

**Other Authorities**

Fed. R. Civ. P. 8(c) ..............................................................................................24, 25

Fed. R. Civ. P. 9(b) ...............................................................................................8, 9

Fed.R.Civ. P. 12(b)(6)............................................................................................5

Fed. R. Civ. P. 12(d) .............................................................................................5, 15

Fed. R. Civ. P. 12(f).............................................................................................25

Fed. R. Civ. P 56......................................................................................................5

H.R. Rep. No. 112-98, at 54 (2011)......................................................................2, 3

L.R. 56.1, N.D. Ga......................................................................................................5

## I.   PRELIMINARY STATEMENT

Plaintiff PPS Data, LLC ("PPS Data") filed this action against Defendant Vsoft Corporation ("Vsoft"), asserting infringement of U.S. Pat Nos. 7,181,430 (the "'430 Patent"), 7,216,106 (the "'106 Patent"), 7,440,924 (the "'924 Patent"), 7,624,071 (the "'071 Patent"), and 8,660,956 (the "'956 Patent")[1] (D.I. #1, Exs. A-E).  In response, Vsoft filed its Answer and Counterclaim, denying infringement of the Patents-in-Suit and claiming, *inter alia*, that the Patents-in-Suit are invalid for inequitable conduct by reason of a false representation made in an inventor declaration submitted during the prosecution of the application that matured into the '430 Patent. (D.I. #19).  The Motion seeks to dismiss Vsoft's inequitable conduct counterclaims (D.I. #22).

In its Motion, PPS Data mischaracterizes Vsoft's counterclaims as a "plague." On the contrary, such counterclaims are often the only way for an accused infringer to defend itself from meritless claims asserted by a non-practicing entity ("NPE"). As the Court of Appeals for the Federal Circuit observed:

> [NPEs are] generally immune to counterclaims for patent infringement, antitrust, or unfair competition because [they do] not engage in business activities that would potentially give rise to those claims. And while [NPEs risk] licensing revenue should [their] patents be found invalid or if a court narrowly construed the patents' claims to exclude

---

[1]   The '430 Patent, the '106 Patent, the '924 Patent, the '071 Patent, and the '856 Patent are collectively referred to as the "Patents-in-Suit."

> valuable targets, [NPEs do] not face any business risk resulting from the loss of patent protection over a product or process. [Their] patents protect[] only settlement receipts, not [their] own products.

*Eon-Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1327-28 (Fed. Cir. 2011) (upholding finding that NPE plaintiff's pursuit of objectively baseless claims constituted an "exceptional case" warranting the award of attorneys' fees). PPS Data admits to being a NPE in the financial services industry, describing itself as being formed for purposes of "commercializ[ing] the patented remote deposit technology" and being in the business of "licensing the patented technology at issue in this case." (D.I. #22, p. 5, n. 3).

Meritless patent claims have exploded in the last decade. See H.R. Rep. No. 112-98, at 54 (2011). In response, Congress passed, among other legislation, Section 18 of the America Invents Act ("AIA"), which creates a new United States Patent and Trademark Office ("PTO") administrative proceeding for challenging a business-method patent on almost all validity grounds throughout the life of the patent. *See* Leahy-Smith America Invents Act, Pub. L. No. 112-29, §18, 125 Stat. 283, 329-31 (2011). The final Committee Report for the AIA explained the need for Section 18 as follows:

> A number of patent observers believe the issuance of poor [quality] business method patents during the late 1990's through the early 2000's led to the patent "troll" lawsuits that compelled the Committee to launch the patent reform project 6 years ago. At the time, the [PTO] lacked a sufficient number of examiners with expertise in the relevant

2

art area.  Compounding this problem there was a dearth of available prior art to assist examiners as they reviewed business method applications.

H.R. Rep. No. 112-98, at 54 (2011) (the "AIA Committee Report").

PPS Data's Patents-in-Suit fall squarely into this description. First, as PPS Data admits, the Patents-in-Suit cover a business method, namely, for "banks, credit unions, merchants, and consumers to clear checks by transmitting only an image of the check and the data on the check without ever physically routing a paper check." (D.I. #22, p. 4). The parent of the Patents-in-Suit—the '430 Patent—was filed in 2000, right in the middle of the "late 1990's through 2000's" timeframe identified by the AIA Committee Report. The examiner assigned to the '430 Patent application appears to have had zero experience in the banking industry.  And a dearth of prior art appears to have been available to the examiner as no non-patent literature or foreign patents were ever cited against the Patents-in-Suit, notwithstanding the fact that financial institutions at that time had been outsourcing their check processing duties, (D.I. #19, ¶¶77-78).

Despite these shortcomings in the prosecution process, the examiner assigned to the application that matured into the '430 Patent still recognized that the claimed invention was obvious. (D.I. #19, Exs. A, C, E, G, I, and K). In particular, she found that the practice of unrelated banks of first deposit

9378961 v2

outsourcing their check processing duties to a separate "central system" was well known in the art.  (D.I. #19, Ex. I, p. 5).

One of the named inventors of the '430 Patent, Mr. Danne Buchanan, strenuously disagreed with the examiner's finding. Throwing the weight of his "27 years of banking industry experience" and his "familiar[ity] with competitor check processing operations" at the examiner, he unequivocally represented that "there is no possible reason why a bank of first deposit would set up a central system to process checks for other unrelated banks of first deposit." (D.I. #19, ¶¶69-70). As set forth in Vsoft's Counterclaim, this representation was false. (D.I. #19, ¶¶75-80).

The Motion should be recognized for what it is—an ill-disguised attempt to suppress the fraudulent circumstances surrounding the issuance of the Patents-in-Suit. In any event, Vsoft has adequately pleaded both the materiality and intent aspects of its inequitable conduct counterclaim and the requisite relatedness of that inequitable conduct to the Patents-in-Suit claiming priority to the '430 Patent to establish infectious inequitable conduct.

Accordingly and as explained more fully below, the Motion should be denied.

9378961 v2

## II.   POINTS AND AUTHORITIES

The Motion is both procedurally flawed and substantively without merit.  As an initial matter, PPS Data devotes much of its Motion to issues wholly irrelevant to the Motion—PPS Data's substantive infringement claims against Vsoft.  (D.I. #22, p. 5-6, Exs. 1-4).  Indeed, PPS Data's attachment of—and reliance in its briefing upon—Exhibits 1-4 likely transforms its Motion into an improper motion for summary judgment pursuant to Fed. R. Civ. P. 12(d)[2] as the Motion fails to include the requisite statement of material facts required by LR 56.1, N.D. Ga.

Even if the Court were to ignore this procedural defect, the Motion would still be without merit as it is based upon misapprehensions of the applicable law and mischaracterizations of the statements made to the PTO upon which Vsoft bases its claims for inequitable conduct.

### A.   The Motion Apparently Misapprehends the Standard For Pleading Inequitable Conduct.

#### 1.   The Motion Cannot Meet the Standard Under Fed. R. Civ. P. 12(b)(6).

A claim for relief may be dismissed under Fed. R. Civ. P. 12(b)(6) if it fails to state a claim upon which relief may be granted. A Rule 12(b)(6) motion to dismiss will fail if a complaint contains sufficient factual matter, which if accepted as true

---

[2]   If, on motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. …  Fed. R. Civ. P. 12(d) (2015).

9378961 v2

states a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff [or counterclaimant] pleads factual content that allows the court to draw the reasonable inference that the defendant [or counter defendant] is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint—or in this case, a counterclaim—as true and construe them in the light most favorable to the plaintiff. *See Twombly*, 550 U.S. at 555; *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 994–95 (11th Cir.1983). *See also Pullar v. Gen. MD Group*, 2013 WL 5284684 at *2 (N.D.Ga. Sept. 17, 2013) (at the pleading stage, the plaintiff "receives the benefit of imagination"); *Graphic Packaging Int'l, Inc. v. C.W. Zumbiel Co.*, 2011 WL 5829674 at *1 (N.D.Ga. Aug. 1, 2011) (When considering a motion to dismiss, the Court must accept the factual allegations in the counterclaim as true, construe them in the light most favorable to the nonmoving party, and accept all inferences reasonably drawn from those allegations).

2.    The Motion Misapprehends The Materiality Standard of *Therasense.*

Inequitable conduct is an equitable defense to patent infringement that bars enforcement of a patent. *Therasense, Inc. v. Becton Dickinson and Co.*, 649 F.3d 1276,

6

9378961 v2

1285 (Fed. Cir. 2011) (en banc).  The Federal Circuit has held that, as a general matter, a "but-for materiality" standard is required to succeed on a claim for inequitable conduct, *i.e.* "[w]hen an applicant fails to disclose prior art to the PTO, that prior art is "but-for" material if the PTO would not have allowed a claim had it been aware of the undisclosed prior art." *Id.* at 1291.

However, in cases, like this one, where a false statement is made to the patent examiner during the prosecution of the patent, an exception to the "but-for materiality" standard exists—*a false statement is by its very nature material*.  *Id.* at 1292 (emphasis added) ("there is no room to argue that submission of false affidavits is not material" *citing Rohm & Haas Co. v. Crystal Chem. Co.*, 722 F.2d 1556, 1571 (Fed.Cir.1983)).  Indeed, as *Therasense* explains, "[a]fter all, a patentee is unlikely to go to great lengths to deceive the PTO with a falsehood unless it believes that the falsehood will affect issuance of the patent."  *Id.*

The first standard—applicable to non-disclosed prior art—requires that accused infringer must show by clear and convincing evidence both that: (1) but-for the failure to disclose, the PTO would not have allowed a claim to issue, and (2) the patentee made a deliberate decision to withhold a known material reference. *Id.* The second standard—applicable to cases, like here, of affirmative misrepresentation— is an exception to the general rule requiring but-for materiality and provides the

7

inequitable conduct test with sufficient flexibility to capture all circumstances where an applicant has deliberately defrauded the PTO. *Id.*

Thus, *Therasense* sets up a two tests for ***proving*** materiality in inequitable conduct claims.  For claims based upon (i) a failure to disclose, the accused infringer must show "but-for" causation to establish materiality, *i.e.*, but for the failure to disclose the withheld information, the patent would not have issued, while for (ii) false statements made during the prosecution, materiality is presumed.  *Id.*

      3.       The Motion Conflates the *Therasense* Standard for Proving Inequitable Conduct with the Particularity Requirements Set Forth in *Exergen*.

Inequitable conduct must meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b).  Under Fed. R. Civ. P. 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (2015).  A proper pleading for inequitable conduct includes the "who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1327 (Fed. Cir. 2009). The relevant state of mind for inequitable conduct—knowledge of the withheld material information and the specific intent to deceive the Patent Office—"may be averred generally." *Id.* In addition, the pleading standard may be relaxed as to matters that are exclusively within the opposing party's knowledge. *See id.* at 1330

("[p]leading on 'information and belief' is permitted under Rule 9(b) when essential information lies uniquely within another party's control"). It is enough at the pleading stage to set forth facts from which the court may "reasonably infer" knowledge of the falsity of the representation and an intent to deceive. *See Delano Farms Co. v. Cal. Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed. Cir. 2011).

Throughout its Motion, Plaintiff misleadingly conflates the heightened requirements for proving both materiality and intent, set forth in *Therasense*, with the standard for pleading inequitable conduct. *See, e.g.*, Motion at 10-13 (relying on *Therasense* which involved a determination on the merits, rather than pleading standards). But *Therasense* did not address the proper standard to be applied at the pleading stage. *Evonik Degussa GmbH v. Materia Inc.*, No. 09-cv-636 (NLH-JS), 2012 WL 4503771, at *3 (D. Del. Oct. 1, 2012). Although *Therasense* raised the bar for proving inequitable conduct on the merits, it did not change the standard for pleading inequitable conduct. *Delano Farms*, 655 F.3d at 1350. Rather, that standard is set forth in *Exergen*. *Id.*; *see also Evonik*, at *4 (the proper standard to apply for a motion to dismiss is the standard set forth in *Exergen*, not *Therasense*).

**B.    Vsoft's Inequitable Conduct Counterclaims Clearly Satisfy The Materiality-Related Pleading Requirement of *Exergen*.**

As an initial matter, it is well-settled that an intentional misrepresentation made to the Examiner during the prosecution of a patent ***per se*** satisfies the

9

materiality prong of *Exergen*. *See Thereasense*, at 1292 (a false statement is by its very nature material). Even ignoring this standard, though, Vsoft's inequitable conduct claim identifies a misrepresentation of fact and does so with sufficient particularity to set forth the "who, what, when, where, why and how" of the misrepresentation. *Exergen*, 575 F.3d at 1327.  Indeed, the Motion concedes that Vsoft's counterclaim meets the "who," "what," "when," and "where" elements, arguing only that Vsoft's counterclaim fails to articulate "why the allegedly misrepresented information is material and not cumulative" and "how the [PTO] would use the information to assess the patentability of the claims."  (D.I. #22, p. 14).

PPS Data's concessions, however, foreclose the relief it seeks in the Motion. The "how" and "why" elements are directed towards establishing the "but-for" materiality requirement. *Exergen*, at 1329-30. As explained above, however, the "but-for" materiality requirement is only applicable in inequitable conduct claims premised upon a failure to disclose. *Therasense* at 1292.  Unlike undisclosed prior art, Mr. Buchanan's false statements to the PTO are ***per se*** material and, therefore, no showing of "but-for" materiality is required.  *Id.* (emphasis added).

      1.    Even Ignoring the *Per Se* Materiality of Mr. Buchanan's Misrepresentation, Vsoft's Inequitable Conduct Counterclaims Satisfy the "Why" Requirement of *Exergen*.

Plaintiff first attacks the sufficiency of Vsoft's inequitable conduct claim by arguing that Mr. Buchanan's misrepresentation was merely his opinion and thus

immaterial. (D.I. #22, at 16). Plaintiff's characterization of Mr. Buchanan's statement

is, at best, misleading.  Mr. Buchanan did not "preface[] his declaration with the

phrase 'in my opinion,'" as Plaintiff argues. (D.I. #22, at 16). That specific phrase

does not appear in Paragraph 11 of his declaration until the last sentence—after Mr.

Buchanan's affirmative misrepresentation regarding the state of the art.  (D.I. #19,

Ex. J, ¶11).

Rather, the declaration is actually prefaced by introductory paragraphs

identifying Mr. Buchanan as a co-inventor of the purported invention described in

the application that matured into the '430 Patent and touting Mr. Buchanan's "27

years of banking industry experience." (D.I. #19, Ex. J, ¶¶1-3). The declaration then

continues, responding primarily to the examiner's argument that employing a

central system to handle deposited checks is well known in the art.  (D.I. #19, Ex. J,

¶ 11).  Mr. Buchanan's misrepresentation reads in pertinent part as follows:

> However, ***there is no possible reason why*** a bank of first deposit would
> set up a central system to process checks for other unrelated banks of
> first deposit.

(D.I., #19, Ex. J, ¶11) (emphasis added).

Contrary to PPS Data's repeated claims, there is absolutely no equivocation

in this statement—no couching it with the phrase "in my opinion"—and it was

clearly intended to be accepted by the examiner as fact. PPS Data also suggests that

Mr. Buchanan's statement is immaterial because "the examiner [was] able to reach

11

his or her own conclusion regarding the cited piece of prior art." (D.I. #22, p. 16

(citing *Regents of Univ. of Cal. V. Dako N. Am., Inc.*, C.A. No. 05-03955 MHP, 2009 WL

1083446, at *23 (N.D. Cal. Apr. 22, 2009)). Unlike *Regents of Univ. of Cal.*, this is not a

case where the examiner was confronted by a conflicting interpretation of a

particular piece of prior art and was free to disagree with that interpretation.

Rather, the examiner—a patent practitioner, not a seasoned banking executive—

was confronted by Mr. Buchanan's disagreement over certain findings she had

made about what was well known, *i.e.*, the state of the art, in the financial services

industry. The disagreement posited Mr. Buchanan's 27 years' experience and

purported knowledge of the state of the art and "competitor thinking," on the one

hand, against the examiner. The examiner was therefore hardly in a position to

reach her own conclusion about the matter.

Given this, Vsoft has clearly pleaded the "why" element of *Exergen*.

2.     Even Ignoring the *Per Se* Materiality of Mr. Buchanan's
       Misrepresentation, Vsoft's Inequitable Conduct Counterclaims
       Satisfy the "How" Requirement of *Exergen*.

Further, PPS Data argues that Vsoft has not established how the PTO would

have used the accurate information had Mr. Buchanan not made his misstatement,

apparently contending that Mr. Buchanan's misrepresentation was "cumulative of

the prior art already before the" PTO.  (D.I. #22, p. 16).  PPS Data's assertion

demonstrates a fundamental flaw with its argument.  Mr. Buchanan's

misrepresentation was not "cumulative of the prior art"—it was submitted to the PTO to directly contradict what the PTO believed to be the current state of the prior art to overcome an obviousness objection.  Simply put, the examiner surmised what she believed was likely the relevant state of the prior art from common sense and certain patents and Mr. Buchanan's Declaration sought to "correct" the examiner's understanding—based upon his 27 years' experience and familiarity "with competitor check processing operations and competitor thinking."  (D.I. #19, Ex. J, ¶2).

Equally flawed is PPS Data's argument that Mr. Buchanan's misrepresentation could not be material since the PTO rejected the claims over Mr. Buchanan's declaration.  (D.I. #22, pp. 9, 15-16).  PPS Data explains that immediately following Mr. Buchanan's false statement, the examiner maintained her earlier rejection of the application that matured into the '430 Patent. Accordingly, PPS Data contends that the false statement "clearly had no effect in overcoming the rejection and obtaining allowance of the '430 patent claims." (D.I. #22, pp. 15-16). In effect, PPS Data is asking the Court to weigh the evidence and reach a determination as to the degree to which Mr. Buchanan's false statement impacted the PTO. Such a request is premature at the motion to dismiss stage. *See,*

9378961 v2

*e.g.*, *Adinolfe v. United Technologies Corp.*, 768 F.3d 1161, 1168 (11th Cir. 2014) (at the motion to dismiss stage, the Court does not weigh the alleged facts).

Moreover, PPS Data's claim that Mr. Buchanan's false statement had "no effect" on the PTO is not borne out by a basic review of the prosecution history. After Mr. Buchanan's false declaration was filed, the examiner issued a final office action in which she maintained her obviousness rejection of the pending claims in view of Geer. (D.I. #22, Ex. 9). Undeterred, Mr. Buchanan's attorney filed a notice of appeal, in which he reiterated Mr. Buchanan's false statements and further accused the examiner of failing to consider Mr. Buchanan's affidavit. (Declaration of Michael Shin ("Shin Decl."), Ex. 1).[3] ("**There would be no reason** for a bank of first deposit to receive checks for deposit in payor accounts held in other banks of first deposit . . . [T]he examiner has failed to consider the Declaration of Mr. Buchanan submitted on May 6, 2005, on commercial success for this claimed system **and its non-obviousness**.") (emphasis added).  As a direct result of these arguments, the examiner withdrew her earlier rejection. (Shin Decl., Ex. 2).

Thereafter, the pending claims of the '430 patent application were rejected yet again, but this time the basis for the rejection was fundamentally different. The examiner still found that Geer did not disclose a central system for processing

---

[3]   The Shin Decl. is being filed concurrently herewith as Exhibit A.

checks that is separate from the bank of first deposit. (Shin Decl., Ex. 3, p. 5). But instead of arguing that this missing limitation was obvious because the outsourcing of check processing duties to a central system was well known in the art, the examiner instead argued that the missing limitation was supplied by U.S. Patent No. 6,289,322 to Kitchen. (Shin Decl., Ex. 3, pp.5-6).[4] The only reasonable inference to be drawn from this shift in analysis is that the examiner had been "affected" by Mr. Buchanan's false assertion that there would be "no reason" for unrelated banks to outsource check processing to a central system.

Thereafter, when faced with yet another obviousness rejection, Mr. Buchanan's attorney still made no effort to cure his client's misrepresentation or confront the rejection anew. Instead, the attorney relied yet again upon the same repeated false statement of Mr. Buchanan, although now mischaracterizing the statement as an "opinion" of Mr. Buchanan. (D.I. #19, Ex. L, pp. 52-54). Based upon

---

[4]   Unlike the website materials attached to the Motion discussing Vsoft's products and services, the Shin Decl. authenticates excerpts from the file history of the '430 Patent, which are referenced in Vsoft's counterclaim or matters of public record of which the Court may properly take judicial notice under Fed. R. Civ. P. 12(d).  *Papasan v. Allain*, 478 U.S. 265, 268 n. 1 (1986); *Paolo v. OneWest Bank, FSB*, 2014 WL 3557703 *7, n.2 (N.D. Ga. July 18, 2014). It is well-settled that the file history is part of the public record of a patentee's claim. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1583 (Fed.Cir.1996).

this argument, the examiner finally allowed the pending claims of the application that matured into the '430 Patent to issue at the end of 2006. In view of the above, it cannot be credibly argued that Mr. Buchanan's false statement had "no effect" on the examiner.

Accordingly, Vsoft's inequitable conduct counterclaims satisfy the "how" requirement of *Exergen*.

C.   **Vsoft's Inequitable Conduct Counterclaims Adequately Plead Intent to Deceive under *Exergen*.**

Because direct evidence of deceptive intent is rare, a district court may infer intent to deceive based on direct evidence as well as indirect and circumstantial evidence. *Thereasense*, at 1290. Further, the Federal Circuit has made clear that, at the pleading state, intent "may be averred generally" so long as "the pleadings allege sufficient underlying facts from which a court may ***reasonably infer*** that a party acted with the requisite state of mind." *Exergen*, at 1328. The Federal Circuit has further explained that "[ a] reasonable inference is one that is ***plausible*** and that flows logically from the facts alleged." *Id*. at 1329 n.5 (emphasis added).

PPS Data first attacks the sufficiency of Vsoft's specific intent allegations on the basis that Vsoft provides neither the information on which it relies nor any plausible reasons for its belief that the statement was false." (D.I. #19, p. 18). PPS Data is wrong. According to PPS Data's own allegations, Vsoft provides remote

deposit capture, deposit processing, and remote deposit solutions. (D.I. #1, ¶14). Vsoft's answer admits these allegations. (D.I. #19, ¶14). The answer further explains that Vsoft has been providing the services accused of infringement and other services to financial institutions since at least 1997 (D.I. #19, ¶14). Accordingly, Vsoft clearly has the institutional knowledge to determine the untruthfulness of Mr. Buchanan's statement about check processing practices in the financial services industry.

PPS Data argues in the alternative that Mr. Buchanan's false statement is not inconsistent with the outsourcing practices of financial institutions, because the statement was only an opinion. (D.I. #22, p. 19). As explained above, Mr. Buchanan was not opining—he was making a false assertion of fact. He wanted the examiner to accept this false statement as fact based on his "27 years of banking experience," and the Examiner eventually did precisely that.

PPS Data next insists that Vsoft's pleading provides no "factual basis" to support the allegation that Mr. Buchanan knew that his statement was false. (D.I. #22, p. 20). This argument ignores the abundance of indirect and circumstantial evidence from Vsoft's pleading from which the Court "may reasonably infer that [Mr. Buchanan] knew of this material [misrepresentation]." *Therasense*, at 1290 ("Because direct evidence of deceptive intent is rare, a district court may infer intent

from indirect and circumstantial evidence."). Vsoft's pleading and the prosecution

history that is incorporated therein by reference details how Mr. Buchanan held

himself out to the PTO as being a seasoned veteran of the banking industry with a

particular expertise in check processing practices. Specifically, he declared himself

as having "27 years of banking experience." (D.I. #19, Ex. J, ¶2).  He also declared

that he was serving as an executive of a national bank holding company

"operat[ing] more than 325 full-service banking offices" and that he had "testified

before Congress on banking issues." (D.I. #19, Ex. J, ¶2). He also told the examiner

that he was "very familiar with competitor check processing operations and

competitor thinking at the time of the invention."  (D.I. #19, Ex. J, ¶2). The only

plausible inference to be drawn from Mr. Buchanan's self-described background

and expertise is that he knew certain financial institutions had a reason to outsource

their check processing duties and that such outsourcing practices were already well

known in the industry. Therefore, he knew that his statement was false.

PPS Data similarly argues that Vsoft's allegations concerning Mr. Buchanan's

specific intent to deceive the PTO are unsupported by "any facts." (D.I. #22, p. 21).

To the contrary, Vsoft's pleading and the prosecution history incorporated by

reference therein are replete with indirect and circumstantial evidence showing that

Mr. Buchanan acted with specific intent to deceive the PTO. When Mr. Buchanan's

18

false statement was made, the application that matured into the '430 Patent had been languishing at the PTO for almost five years. (D.I. #19, ¶¶ 59, 69-70). During that time, the examiner issued at least five office actions. (D.I. #19, ¶¶ 60, 62, 64, 66 and 68). Geer was cited against the pending claims in at least four of those office actions. (D.I. #19, ¶¶ 60, 64, 66 and 68). Mr. Buchanan's attorney tried and failed to get around Geer: he added new claims, cancelled old ones, added narrowing limitations, and presented all manner of arguments, all to no avail. (D.I. #19, ¶¶ 61, 63, 65 and 67). Finally, Mr. Buchanan's attorney filed a declaration from Mr. Buchanan, whose purported expertise in the banking industry was impossible for the examiner to ignore. Indeed, shortly after Mr. Buchanan's false declaration was filed, the examiner abandoned her previous finding that the outsourcing of check processing duties to a "central system" was well known in the art. (Shin Decl., Ex. C, pp. 5-6). A short nine months thereafter, the examiner issued her Notice of Allowance. The only reasonable inference to draw from these set of facts is that Mr. Buchanan acted with the specific intent to deceive the examiner so as to finally overcome the examiner's repeated rejections. *See Intellect Wireless, Inc. v. HTC Corp.*, 732 F.3d 1329, 1345 (Fed. Cir. 2013) ("Submission of a[] [false] affidavit . . . in order to overcome a prior art reference raises a strong inference of an intent to deceive.")

PPS Data's own Motion to dismiss sets forth additional circumstantial evidence supporting this conclusion. In 2003, Congress passed the Check Clearing for the 21st Century Act, Pub. L. No. 108-100, 117 Stat. 1177 (2003) ("the Check 21 Act"). (D.I. #22, pp. 4-5). PPS Data alleges that Mr. Buchanan was intimately involved in the legislative process surrounding the Check 21 Act. (D.I. #22, p. 5) ("Mr. Buchanan . . . represented the five major banking and financial services trade associations . . . before the Senate Banking Committee on the Check 21 Act."). PPS Data also alleges that it has profited from the passage of the Check 21 Act and the adoption of the same by the financial services industry.  (D.I. #22, p. 5) ("passage of the Check 21 Act facilitated financial institutions' more rapid adoption of PPS Data's patented remote deposit technologies"). At the time of the Check 21 Act's passage, however, the application that matured into the '430 Patent was still pending and thus could not be wielded to squeeze licensing revenues from financial service providers. Mr. Buchanan therefore had an urgent pecuniary interest in seeing to it that the '430 Patent issued.

For these reasons, PPS Data's attacks on the sufficiency of Vsoft's "specific intent" allegations should be denied. Vsoft has pled more than enough facts from which the Court can reasonably infer that Mr. Buchanan's statement to the

9378961 v2

examiner was false, that he knew it was false, and that he acted with a specific intent to deceive the PTO.

**D.    Vsoft's Counterclaims Adequately Plead Infectious Inequitable Conduct.**

A "patentee's inequitable conduct renders unenforceable all patent claims having 'an immediate and necessary relation' to that conduct, regardless of whether the claims are contained in a single patent or a series of related patents." *Truth Hardware Corp. v. Ashland Products, Inc.*, 2003 WL 22005839, at *1 (D. Del. Aug. 19, 2003) (*citing Keystone Driller Co. v. General Excavator Co.*, 290 U.S. 240, 245 (1933)); *Semiconductor Energy Lab. Co. v. Samsung Elec. Co.*, 24 F. Supp. 2d 537, 543 (E.D. Va. 1998)). As a result, inequitable conduct "early in the prosecution may render unenforceable all claims which eventually issue from the same or a related application." *Agfa Corp. v. Creo Prods. Inc.*, 451 F.3d 1366, 1379 (Fed. Cir. 2006). A person cannot cure inequitable conduct in one application by filing related applications because that would allow "a party committing inequitable conduct [to] avoid the consequences of that conduct through a scheme of divisional and continuation applications." *Semiconductor Energy*, at 544 ("[t]he law does not countenance such a manipulation of the patent process.")

As observed in *Semiconductor Energy*, if patent applicants could rely upon subject matter in earlier filed applications that was tainted with fraud, patentees

would effectively have an incentive to commit fraud on the patent office. *See id.* For instance, an applicant who fabricated evidence to obtain an earlier invention date could simply file a continuation to insulate himself from the potential negative consequences. *See id.* On one hand, if the fraud remained undiscovered, the patentee obtains the benefit of an earlier invention date. On the other hand, if the fraud were exposed, he would be in the same situation as before, *i.e.*, he could continue to prosecute this subject matter in a continuation application as before, albeit without the benefit of a fraudulent invention date. The law, however, rightly seeks to discourage fraudulent conduct. *See id.*; *see also Rohm*, 722 F.2d at 1571 ("a very important policy consideration is to discourage all manner of dishonest conduct in dealing with the PTO").[5]

Vsoft's pleading establishes how Mr. Buchanan's inequitable conduct in prosecution of the application that matured into the '430 Patent appropriately

---

[5]   An exception to this rule—not applicable to the Patents-in-Suit—is for "divisional" applications, which by definition are drawn to and claim "independent and distinct inventions" from that of its parent. *See* 35 U.S.C. § 121; see also *Truth Hardware*, 2003 WL 22005839 at *2, n.1 ("while a divisional application relates to inventions separate and distinct from those claimed in a parent application, the present action does not concern such an application."). This narrow exception has no applicability to continuation or continuation-in-part applications. *See id.*

infects the other Patents-in-Suit. Mr. Buchanan's false statement was made with respect to a rejection of claim 47 of the application (later issued as claim 1 of the '430 Patent) (D.I. #19, ¶¶69-70, Ex. J). The specific claim limitation to which Mr. Buchanan's misrepresentation was directed recites "wherein the central system is separate from MICR capture, deposit accounting, cash management, and float processing systems for a bank of first deposit." (D.I. #19, Ex. J).  This limitation is recited verbatim in the claims of the other patents-in-suit, except for U.S. Pat. No. 8,126,809, which merely omits the phrase "cash management." This is consistent with Vsoft's allegation that the claims of that the claims of the '430 Patent and the other Patents-in-Suit claim "subject matter that is directly related to and closely linked…".  (D.I. #19, ¶¶ 85, 89, 93, and 97).

Importantly, the '430 Patent is the parent of each and every one of the other patents-in-suit. *Id*. Three of those children patents were not filed or were largely unexamined until after the '430 Patent was issued. The sole remaining child patent—the '106 patent—was examined by the same examiner assigned to the '430 Patent's application who would therefore have known about the false representation made by Mr. Buchanan during the prosecution of the '430 Patent.

Accordingly, if the '430 Patent is rightly adjudicated to be unenforceable or invalid, the other Asserted patents must meet the same fate. PPS Data's efforts to

9378961 v2

have Vsoft's infectious unenforceability counterclaims dismissed, therefore, should be denied.

### E.   PPS Data's Request to Strike Vsoft's Fifth Affirmative Defense of Inequitable Conduct Is Meritless.

PPS Data seeks this Court to strike Vsoft's Fifth Affirmative Defense, which asserts that the Patents-in-Suit are invalid by reason of PPS' Data's inequitable conduct in the prosecution of the '430 Patent.  (D.I. #19, p. 18).  PPS Data asserts that this defense should be stricken on two grounds:  (i) the same grounds upon which it bases its Motion seeking dismissal of Vsoft's counterclaims for inequitable conduct and infectious inequitable conduct and (ii) as redundant of such counterclaims.  (D.I. #22, p. 24).  Neither assertion provides a basis for the relief requested.

As demonstrated above, Vsoft's counterclaims for inequitable conduct and infectious inequitable conduct are well pleaded, conforming to the standards set forth in *Exergen*.  Given this, Vsoft's Fifth Affirmative Defense, which clearly relies upon the same points and authorities, is equally well-founded.

Similarly, PPS Data's contentions regarding Vsoft's Fifth Affirmative Defense being redundant misapprehends Vsoft's obligations under the Federal Rules of Civil Procedure.  Rule 8(c) is unequivocal—"a party *must affirmatively state any avoidance or affirmative defense*…".  Fed. R. Civ. P. 8(c) (2015) (emphasis added).

24

Accordingly, Vsoft is required by Rule 8(c) to assert its Fifth Affirmative Defense.  It

follows, then, that which is required by Rule 8(c) cannot be "redundant, immaterial,

impertinent or scandalous" matter subject to being stricken under Fed. R. Civ. P.

12(f).

### III.     CONCLUSION

Based upon the foregoing, PPS Data's Motion should be dismissed.

Respectfully submitted,

MORRIS MANNING & MARTIN LLP

/s/ Bryan G. Harrison
    Bryan G. Harrison
    bgh@mmmlaw.com
    Georgia Bar No. 331750
    Benjamin J. Warlick
    bwarlick@mmmlaw.com
    Georgia Bar No. 594669

1600 Atlanta Financial Center
3343 Peachtree Road, N.E.
Atlanta, Georgia 30326-1044
Tel: (404) 233-7000
Fax: (404) 365-9532

Attorneys for Defendant Vsoft
Corporation.

9378961 v2

## <u>CERTIFICATE OF COMPLIANCE</u>

In accordance with L.R. 7.1D, N.D. Ga., the undersigned counsel hereby certifies that the foregoing brief was prepared using 13-point Book Antiqua font in accordance with L.R. 5.1, N.D. Ga.

/s/    Bryan G. Harrison

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 30, 2015, I have caused the foregoing

**DEFENDANT VSOFT CORPORATION'S POINTS AND AUTHORITIES IN OPPOSITION**

**TO PLAINTIFF'S MOTION TO DISMISS VSOFT CORPORATION'S INEQUITABLE**

**CONDUCT COUNTERCLAIM AND STRIKE PARALLEL DEFENSES** to be filed with the

Clerk of Court via the CM/ECF Electronic Filing System of the United States

District Court for the Northern District of Georgia, which will automatically

send email notification of such filing to all attorneys of record.

/s/ Bryan G. Harrison
Bryan G. Harrison